IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JASON CLIFFORD CONWAY, | § | |
|     Petitioner | § | |
| | § | |
| VS. | § | C.A. NO. C-06-356 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| DIRECTOR, TEXAS DEPARTMENT | § | |
| OF CRIMINAL  JUSTICE– | § | |
| CORRECTIONAL INSTITUTIONS | § | |
| DIVISION, | § | |
|     Respondent | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner, an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), currently is incarcerated at the McConnell Unit in Beeville, Texas.  The events about which he complains occurred at the Stiles Unit in Beaumont, Texas.  Proceeding *pro se,* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. §  2254 on August 10, 2006 (D.E. 1).[1]  Petitioner argues that his due process rights were violated in a disciplinary hearing in the following manner: (1) There was insufficient evidence to support a finding of guilt; (2) The charging officer participated in the investigation in violation of TDCJ-CID policies; (3) No evidence was introduced regarding the reliability of the confidential informants and (4) He was not allowed to cross-examine witnesses.  Respondent filed a motion for summary judgment on October 4, 2006 (D.E. 5) to which petitioner responded on November 17, 2006 (D.E. 7).

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate because petitioner is incarcerated in Bee County.  Wadsworth v. Johnson, 235 F.3d 959, 961 (5th Cir. 2000).

---

[1]Petitioner executed and mailed his petition on August 10, 2006.  Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988).

## **BACKGROUND**

Petitioner currently is serving a 15-year sentence for possession with intent to deliver cocaine (D.E 5, Ex. A). He does not complain about his holding conviction, but challenges the results of a disciplinary hearing. In disciplinary case number 20060009014 petitioner was accused and found guilty of possessing marijuana (Disp. Hrg. Recs., D.E. 6, p. 1).

In the offense report, the charging officer, Captain F. Gordon, stated that on September 3, 2005, after visiting with friends or family, petitioner gave offender Hendricks a package containing marijuana. It was Hendricks' job to carry the package to 8 Building L Pod where he was going to return the package to petitioner in return for payment. Hendricks was observed by Sergeant Keal on 8 Building trying to gain access to 8 Building L Pod. Petitioner also was observed during this time in the 8 Building hallway close to Hendricks. The package was recovered and tests showed it was marijuana (Disp. Hrg. Recs., D.E. 6, p. 2).

Sergeant Keal reported that at the time Hendricks was found with marijuana petitioner refused to leave the area and she had to threaten to use chemical agents more than once to get him to leave. She also reported that confidential informants told her that petitioner was a member of the Bloods gang and was running an organization that was distributing tobacco and marijuana in the prison. She said that the informants were reliable and had provided other useful information, including information that on another occasion led to the discovery of tobacco hidden in the prison (Disp. Hrg. Recs., D.E. 6, p. 11).

During the pre-hearing investigation and at the hearing the petitioner stated that he was not involved in the incident, had never possessed marijuana and that no marijuana was found on his person or in his property (Disp. Hrg. Recs., D.E. 6, pp. 3, 7, 10). Sergeant Keal confirmed that no marijuana was found on petitioner's person or in his cell (Disp. Hrg. Recs., D.E. 6, p. 12).

2

Petitioner was found guilty based on the charging officer's report and the statements of the other corrections officers (Disp. Hrg. Recs., D.E. 6, p. 1).  He was punished with the loss of 45 days of commissary and recreation privileges, a reduction in line class form L1 to L3, 15 days of solitary confinement, 45 days of cell restriction and the loss of 180 days of good time (Disp. Hrg. Recs., D.E. 6, p.10).

Petitioner filed a Step 1 grievance on September 14, 2005 complaining about the results of the disciplinary hearing and specifically about the fact that no marijuana was found on him or in his cell and no one saw his visitors leave marijuana or anything else in the bathroom.  In addition, he complained that he was not allowed to question the confidential informants.  The warden responded that a preponderance of evidence supported a finding of guilt and that no procedural errors were noted during the hearing process (Disp. Grv. Recs., D.E. 6, pp. 1-2).

Petitioner filed a Step 2 grievance on October 27, 2005 where he once again complained about there being insufficient evidence to support the verdict.  He also claimed that Captain Gordon, who made the initial offense report, should not have been allowed to investigate the incident.  He complained again about the use of confidential informants and the fact that no affidavits or signed statements from them were in the record.  In addition, petitioner pointed out that if his visitors were suspected of delivering marijuana to him, prison policy required that they be detained and that law enforcement officers be called to the scene and this was not done (Disp. Grv. Recs., D.E. 6, pp. 3-4).

In the response to the grievance, Kelli Ward stated that the disciplinary hearing officer may not be the employee who filed the charges, ordered the filing of the charges, participated in any incident that led to the charges or made the decision to process the report through a major disciplinary hearing.  Although Captain Gordon was the charging officer in petitioner's case, he did

not serve as the disciplinary hearing officer in petitioner's case and did not conduct the preliminary investigation (Disp. Grv. Recs., D.E. 6, p. 4; Disp. Hrg. Recs. D.E. 6, pp. 1-3).  Regarding the confidential informants, Ward told petitioner that the case was properly conducted in accordance with the requirements for a confidential case and that a hearing officer may use testimony of an investigating officer regarding the testimony of confidential informants.  She also said that there was sufficient evidence to support a finding of guilt and that there were no due process errors in the case (Disp. Grv. Recs., D.E. 6, p. 4).

In his motion for summary judgment, respondent argues that petitioner did not exhaust his administrative remedies and in the alternative, that the hearing complied with due process. Petitioner responds that he did not receive a copy of the disciplinary grievance records or the disciplinary hearing tape.  He also complains that he was not allowed to cross-examine some of the officers.  Regarding the exhaustion issue, he claims that because the response to his Step 1 grievance did not address all the issues he raised, such as his complaint about cross-examining witnesses, in his Step 2 grievances he addressed only what was answered in the Step 1 grievance. He argues that he otherwise exhausted his administrative remedies and that he is entitled to habeas corpus relief.

## **APPLICABLE LAW**

### **A.  Exhaustion of Administrative Remedies**

Before a federal court can grant an application for writ of habeas corpus, an applicant must have exhausted the remedies available in the courts of the state.  28 U.S.C. § 2254(b)(1).  "To exhaust available state remedies, a habeas petitioner must fairly apprise the highest court of his state of the federal rights which were allegedly violated."  Shute v. State of Texas, 117 F.3d 233, 237 (5th Cir. 1997)(internal quotations omitted).  But, because Texas state courts do not review claims of

lost good time or other results of prison disciplinary proceedings, a petitioner is required to pursue his claims through the administrative appeals process rather than state court.  Ex Parte Palomo, 759 S.W.2d 671, 674 (Tex. Crim.App. 1988); Ex parte Brager, 704 S.W.2d 46 (Tex. Crim. App. 1985). The exhaustion requirement is mandatory and the administrative grievance procedure must be completed before a prisoner can file a law suit in federal court.  Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998).  Notwithstanding a petitioner's failure to exhaust state remedies, an application for a writ of habeas corpus may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Respondent argues that petitioner failed to exhaust his issue regarding cross-examination of witnesses because he raised it in his Step 1 grievance but not is his Step 2 grievance.  Respondent also argues that petitioner failed to exhaust his claim that Captain Gordon should not have been allowed to both charge him in the case and conduct the investigation because he brought it in his Step 2 grievance, but not his Step 1 grievance.

The Fifth Circuit discussed how much detail is necessary in a prison grievance form in Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004).  The Court noted that it has given relatively little guidance on what a prisoner must say in a grievance to properly exhaust his claims and added that as a general matter, courts typically use a standard according to which a grievance should give prison officials fair notice of the problem that will form the basis of the prisoner's suit.

> In deciding how much detail is required in a given case, we believe that a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials time and opportunity to address complaints internally.  Thus, a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit.

Id. at 516-517 (internal quotations and citations omitted).  The court added that the prison system's own rules regarding grievances provide both inmates and the courts with more specific guidance and noted that because prisoners generally are required to follow the procedures adopted by the

state prison system, the specificity requirement should be interpreted in light of the grievance rules of the particular prison system.  Id. at 517.

In this case, petitioner explained why he was dissatisfied with the disciplinary hearing process in his grievances and made clear that he thought the evidence did not support a finding of guilt.  Accordingly, the grievances were sufficient to give prison officials an opportunity to review the disciplinary hearing procedure to see whether it comported with due process.  Indeed, it appears that not only did prison authorities understand petitioner's complaints, they conducted an investigation into the disciplinary hearing procedures and determined that no due process violation had occurred (Disp. Hrg. Recs., D.E. 6, pp. 1-4).  Petitioner provided a sufficient factual basis to allow Respondent a fair opportunity to address the basis of his complaint.  Respondent's argument that petitioner failed to exhaust his administrative remedies is without merit and petitioner's cause of action should not be dismissed for failure to exhaust his administrative remedies.

**B.  Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly
> established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963
> (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976)].  Following
> Wolff, we recognize that States may under certain circumstances create liberty
> interests which are protected by the Due Process Clause.  But these interests will be
> generally limited to freedom from restraint which, while not exceeding the sentence
> in such an unexpected manner as to give rise to protection by the Due Process Clause
> of its own force, nonetheless imposes atypical and significant hardship on the inmate
> in relation to the ordinary incidents of prison life.

Id. (internal citations omitted).  The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  Sandin, 515 U.S. at 486, 115 S.Ct. at 2301.  The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody.  Id.

### 1.  Time Earning Status

To the extent petitioner is complaining about his reduction in Line Class, he fails to state a basis of relief.  Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on the amount of time he is in custody.  Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192 (5th Cir. 1995)(citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)), cert. denied sub nom. Luken v. Johnson, 116 S.Ct. 1690 (1996).  "'Prisoners have no protectable property or liberty interest in custodial classifications.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)).  See also Malchi v. Thaler, 211 F.3d 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).  Accordingly, petitioner is not entitled to habeas corpus relief based on the change in his line class.

**2.  Loss of Good Time**

In addition to the parole scheme in Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division.  Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)).  Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date.  TEX. GOV'T CODE ANN. §508.147 (Vernon 2002).

The Fifth Circuit has determined that prior to September 1, 1996, the mandatory supervision program created a constitutional expectation of early release.  Malchi v. Thaler, 211 F.3d 953, 957-958 (5th Cir. 2000).  The mandatory supervision scheme was revised in 1998 and the language in the new section was designed to avoid creating a protected liberty interest.  Hudson v. Johnson, 242 F.3d 534, 536, n. 1.  However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does.  Id. at 536.  Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision.  Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Petitioner in this case is eligible for release to mandatory supervision (D.E. 5, Ex. A, Commitment Inquiry).  Accordingly, the loss of good time credits as the result of a disciplinary hearing implicates the higher levels of due process contemplated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  The inmate is entitled to the following process:  (1) He must receive written notice of the charges;  (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will

not be unduly hazardous to institutional safety or correctional goals;  (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.  <u>Wolff</u>, 418 U.S. at 564, 94 S.Ct. at 2979.

In this case, petitioner received notice of the charges against him and received a written copy of the hearing officer's decision and the information he relied on to reach his decision (Disp. Hrg. Recs., D.E. 6, p. 1).  Petitioner argues that under TDCJ-CID policy the charging officer should not have been allowed to investigate the case; the reliability of the confidential informants was never established; he was not allowed to cross-examine witnesses and there was insufficient evidence to support a finding of guilt.

### 1.  Violation of TDCJ-CID Policy

Petitioner complains that the charging officer should not have been allowed to participate in the investigation of his case, but there is no Constitutional prohibition against such a policy.  <u>Id.</u> Petitioner argues that it is against TDCJ-CID policy for the charging officer to participate in the investigation, but even if this is true, prison officials' failure to follow a prison's own policies, procedures or regulations does not constitute a violation of due process if constitutional minima are nevertheless met.  <u>Myers v. Klevenhagen</u>, 97 F.3d 91, 94 (5th Cir. 1996)(citing <u>Giovanni v. Lynn</u>, 48 F.3d 908, 912 (5th Cir. 1995); <u>Murphy v. Collins</u>, 26 F.3d 541, 543 (5th Cir. 1994) and <u>Hernandez v. Estelle</u>, 788 F.2d 1154, 1158 (5th Cir. 1986)).  Accordingly, petitioner has failed to state a cause of action with this claim.

### 2.  Reliability of Confidential Informants

Petitioner questions the reliability of the confidential informants because they provided the evidence that the marijuana belonged to him and he was not allowed to question them or see

9

statements from them.  Generally, a bald assertion by an unidentified person, without more, cannot constitute evidence of guilt.  Broussard v. Johnson, 253 F.3d 874, 876 (5th Cir. 2001).  However, testimony by an officer as to the reliability of a confidential informant and the informant's firsthand knowledge can be sufficient evidence of the informant's reliability.  Richards v. Dretke, 394 F.3d 291, 294 (5th Cir. 2004)(citing Smith v. Rabalais, 659 F.2d 539, 541, 546 (5th Cir. 1981)).  In this case, Sergeant Keal testified that the informants were reliable and had supplied useful information in other situations.  Accordingly, she supplied an indicia of reliability to the testimony of the confidential informants and their testimony constitutes evidence in petitioner's case.

### 3.  Cross-Examination of Witnesses

Petitioner complains that he was not allowed to cross-examine witnesses at the disciplinary hearing.  However, prisoners do not have a due process right to confrontation or cross-examination during prison disciplinary proceedings.  Broussard, 253 F.3d at 876 (citing Wolff, 418 U.S. at 556, 94 S.Ct. at 2975.  Petitioner has failed to state a claim on this issue.

### 4.  Sufficiency of the Evidence

Petitioner also complains that there was insubstantial evidence to support a finding of guilt. It is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all.  Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001).  In this case, the hearing officer relied upon the report of the charging officer, who also testified at the hearing, and also on the report and testimony of Sergeant Keal, who repeated what she learned from the confidential informants.  Sergeant Keal also stated that she believed petitioner was guilty based on the fact that he was in the area when the marijuana was found and did not want to leave; he always had visitors

10

between 4:30 and 5:00 p.m. when the staff was more relaxed and because he had had several visits whereas Hendricks (who actually was found with the marijuana) had only had one visit.  The reports and testimony of the officers are some evidence of petitioner's guilt.  Id.

As long as a hearing officer's decision is supported by some evidence and the requirements of Wolff have been met, the decision cannot be disturbed on judicial review.  "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Superintendent Mass. Corr. Institution v. Hill, 472 U.S. 445, 455-456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985);  Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995).  In this case, statements from two corrections officers support the hearing officer's decision. Accordingly, petitioner's argument that the hearing officer's decision was not based on substantial evidence is not supported by the record.

### B.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires

an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on the merits. If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it debatable that petitioner received the procedural safeguards mandated by Wolff. He has not made the necessary showing for issuance of a COA.

## RECOMMENDATION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (D.E. 5) be granted and petitioner's cause of action for habeas corpus relief be dismissed.  It is further recommended that should petitioner seek a Certificate of Appealability, it be denied.

Respectfully submitted  this 6th day of December, 2006.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).